**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK A. RANKINE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 03-313E** |
| | ) | |
| **V.** | ) | |
| | ) | |
| **SUPERINTENDENT RAYMOND J.** | ) | **Judge Sean J. McLaughlin** |
| **SOBINA; UNIT MANAGER McNELIS;** | ) | **Mag. Judge Susan Paradise Baxter** |
| **UNIT COUNSELOR HUGHES; C.O.** | ) | |
| **TROJAN; UNIT MANAGER** | ) | |
| **MAILMAN; C.O. HECKMAN; UNIT** | ) | |
| **COUNSELOR HERDMAN; SGT.** | ) | |
| **CASTINA; MEMBERS OF THE PRC;** | ) | |
| **HEARING EXAMINER CROSS;** | ) | |
| **MARY ANN BERTOLINO; LT.** | ) | |
| **STEVE SIMOSKO; C.O. MUNION;** | ) | |
| **C.O. PRITTS; C.O. CHAPLEY; C.O.** | ) | |
| **FEY; C.O. LUKE; C.O. HEISS; C.O.** | ) | |
| **HUBER; C.O. KROMELL; SGT.** | ) | |
| **STAYER; SGT. DELOSH; LT. T. J.** | ) | |
| **WILSON; JOSEPH; MOLLIGAN,** | ) | |
| | ) | |
| **Defendants.** | ) | **Electronically Filed.** |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,
## OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

### I.  STATEMENT OF THE CASE

Plaintiff, Derrick A. Rankine, is a *pro se* prisoner currently in the custody of the

Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at

Somerset (SCI-Somerset).  Plaintiff has brought the instant action pursuant to 42 U.S.C.

§§ 1983, 1985, and 1986 against several individuals employed by the DOC.[1]

Plaintiff initiated the instant action on October 2, 2003 with the filing of a Motion

to Proceed *in Forma Pauperis*.  (See Docket # 1).  Plaintiff was granted permission to so

---

[1] Plaintiff has also brought these claims pursuant to several statutory provisions that are
not available to him in this context – an issue thoroughly examined in section A below.

proceed (see Doc. # 2), and filed his original Complaint on October 23, 2003 (See Doc. # 3). Before a responsive pleading was filed, Plaintiff moved to amend his complaint, with a proposed Amended Complaint attached in support thereof, on January 15, 2004. (See Doc. # 6). Once again, before a responsive pleading was filed, Plaintiff moved to amend a second time, with a proposed Second Amended Complaint attached in supported thereof, on February 12, 2004. (See Doc. # 33).

A recitation of the procedural history involved in the defendants' previous attempts to either partially or entirely dismiss Plaintiff's claims is largely irrelevant at this time. A teleconference was held with this Honorable Court on April 28, 2006. (See Doc. # 101). At that conference it was determined that there remained 25 defendants: Sobina; McNelis; Hughes; Trojan; Mailman; Heckman; Herdman; Castina; Members of the PRC; Cross; Bertolino; Simosko; Munion, Pritts (a.k.a., Prince); Chapley; Fey; Luke (a.k.a., Lucas); Heiss; Huber; Kromell; Stayer; Delosh; Wilson; Joseph (a.k.a., Joseph Visinisky); and Molligan. (See Doc. # 101). It was also determined that Original Complaint (see Doc. # 3), the First Amended Complaint (see Doc. # 6), and the Second Amended Complaint (see Doc. # 33) all remain "live" and before the Court. (See Doc. # 101).

Consequently, a Case Management Order was entered setting discovery and pretrial deadlines, and directing that the defendants file a responsive pleading to Plaintiff's complaints. (See Doc. # 102). This motion proceeds in accordance therewith.

For the ease of the Court's understanding, citation to Plaintiff's several complaints will be as follows: Plaintiff's original Complaint will be indicated as "C"; Plaintiff's First Amended Complaint will be indicated as "AC-1"; and Plaintiff's Second

Amended Complaint will be indicated as "AC-2."  Inasmuch as Plaintiff's complaints do not contain numbered paragraphs, pinpoint citation will be to the page where practicable.

1.  Plaintiff's Allegations

      In his instant complaints, Plaintiff makes numerous allegations against the defendants, comprising a veritable running tally of his day-to-day life for a period of time from June, 2003 until January, 2004.  Specifically, Plaintiff alleges that, upon arrival at SCI-Somerset from another institution he was denied a single-cell, or Z-code, status by defendants Molligan, Sobina, Trojan, McNelis, Hughes, and Wilson.  (See C, at pp. 6-8).

      Plaintiff states that for his refusal to double-cell, and several other infractions incurred around this time, he received misconducts.  (See C and AC-1, *generally*).  He avers that each time he received a misconduct, he was "tried" by hearing examiner defendant Cross, who refused to allow Plaintiff to call witnesses.  Id.  Plaintiff contends that he was convicted of each infraction and sentenced to separate periods of 30, 45, and 45 days in the Restricted Housing Unit (RHU) (see C, *generally*), and at one point fined $8.30 for destruction of state property (see AC-1, at p. 12).  Plaintiff contends that he was subjected to unconstitutional conditions of confinement during these periods in the RHU.  (See C, at p. 9; and AC-1, at pp. 7, 15-16; and AC-2, at pp. 2-3).

      Plaintiff contends that he was denied access to his prison file, the business management program, and other unspecified educational programs by defendants Hughes, Herdman, Sobina, and Mailman (See C, at pp. 9-10, 13-15).  Plaintiff also contends that his access to the courts was impeded by various defendants when they denied him access to the state copier, placed him on cell restriction that prohibited him

from going to the law library, intercepted and destroyed unspecified legal mail, forced him to mail legal documents home, seized legal documents, denied him adequate law library access while confined in the RHU, and denied him requested law books.  (See C, and AC-1, *generally*).

Plaintiff also alleges that he was subjected to unlawful searches and seizures of both his person and his cell by defendants Heiss, Stayer, Sobina, Molligan, Lucas, Delosh, and Fey wherein property was seized and he was, at times, required to send the property home.  (See C, at pp. 16-17; and AC-1, at pp. 9-11; 13-15; and AC-2, at pp. 2-3).

Plaintiff next states that he was "assaulted" by defendants Chapley and Pritts, who, in the presence of defendants Bertolino and Simosko, were "pushing and pulling" Plaintiff.  (See C, at p. 12).

Plaintiff also alleges that defendants Huber and Kromell violated his right to religious exercise when they, on separate occasions, made him mail home a rosary which was deemed to be contraband and throw away a bible when he refused to stop reading it in the medication line.  (See C., at p 16).

Plaintiff avers that, throughout this complained of conduct, he was subjected to verbal threats and harassment by defendants Trojan, Munion, Hughes, Chapley, Castina, Herdman, Wilson, Heckman, Heiss, Molligan, Sobina, Bertolini, Fey, Pritts, Stayer, and Lucas.  (See C, and AC-1, *generally*).  Plaintiff also generally alleges, that he appealed his misconduct determinations and otherwise filed grievances with defendants Sobina, Bertolino, Molligan, Simosko, and Mailman, and that they failed to respond or responded in a way Plaintiff considered unfavorable.  Id.

Finally, Plaintiff contends that the defendants' actions were motivated by a retaliatory animus caused by Plaintiff's instant and prior litigation against the DOC. (<u>See</u> C, <u>and</u> AC-1, <u>and</u> AC-2, *generally*).

The remainder of Plaintiff's claims are raised against individuals who are no longer parties to the instant action, and as such, have been dismissed pursuant to the Report and Recommendation entered on May 10, 2006. (<u>See</u> Doc. # 106).

Plaintiff demands declaratory judgment, compensatory damages, and a trial by jury. (<u>See</u> C, <u>and</u> AC-1, <u>and</u> AC-2, *generally*).

## II. STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a motion to dismiss cannot be granted unless the court is satisfied that "no relief could be granted under any set of facts that could be proved consistent with the allegation." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. <u>See</u> <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

In ruling on a motion for summary judgment, a threshold inquiry is conducted on the need for a trial. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment

as a matter of law." Federal Rules of Civil Procedure 56(c). <u>See</u> <u>also</u>, <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 325 (1986).

The moving party bears an initial burden of showing the absence of any genuine issues of fact; the non-moving party must set forth specific facts showing that there is a genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicion. <u>See</u> <u>Fireman's Insurance Company of Newark v. DeFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982). There is no issue for trial unless evidence in the record would permit a jury to return a verdict for the non-moving party. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party. <u>See</u> <u>Pollack v. AT&T</u>, 794 F.2d 860, 864 (3d Cir. 1986).

To apply the summary judgment test, the elements of a plaintiff's *prima facie* case under the substantive law are considered. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corporation</u>, 477 U.S. at 322.

## III. ARGUMENT

### A.    Plaintiff cannot raise cognizable claims pursuant to several of the provisions he has listed.

In the introduction to each of Plaintiff's complaints, Plaintiff sets forth a list of statutory and constitutional provisions upon which his factual averments are alleged to proceed. However, on many of these grounds, Plaintiff simply cannot proceed as a matter of law.

Plaintiff states that the instant claims are raised pursuant to 42 U.S.C. §§ 1981 and 1988. These provisions do not create causes of action, rather § 1981 is a "Statement of Equal Rights," and § 1988 describes "Proceedings in Vindication of Civil Rights." As such, Plaintiff's 42 U.S.C. §§ 1981 and 1988 claims should be dismissed.

Plaintiff also states that the instant claims are raised pursuant to 18 U.S.C. §§ 2, 88, 241, 242, and 371. With the exception of § 88, which does not exist, these provisions are criminal charges, not civil, causes of action. Specifically, § 2 defines "principals" in the context of crimes against the United States; § 241 describes "criminal conspiracy against rights"; § 242 describes criminal "deprivation of rights under color of law", and § 371 describes criminal "conspiracy to commit offense or to defraud the United States." As such, Plaintiff cannot proceed in this federal civil litigation on these grounds, and Plaintiff's 18 U.S.C. §§ 2, 88, 241, 242, and 371 claims should be dismissed accordingly.

Similarly, Plaintiff alleges that the defendants, through the complained of conduct described in section I above, violated his Sixth Amendment rights. This claim clearly lacks merit inasmuch as the Sixth Amendment pertains to the right to a jury trial in criminal proceedings, and none of Plaintiff's allegations pertain to his criminal charges or

trial in any way.  (See C, and AC-1, and AC-2, generally).  Plaintiff's Sixth Amendment claims should therefore be dismissed in favor of the defendants.

Plaintiff also contends that the defendants somehow violated his Thirteenth Amendment rights through the course of the events alleged in his various complaints. The Thirteenth Amendment pertains to the abolition of slavery.  Plaintiff makes no allegation that he was made to work against his will, or otherwise.  Moreover, it appears from the amendment itself that there is an exception, allowing "involuntary servitude" "as punishment for crime where the party shall have been duly convicted."  U.S. Const. Amend 13.  Plaintiff's Thirteenth Amendment claims should be dismissed accordingly.

Plaintiff further alleges that his Fifth Amendment due process rights were violated by defendant Cross during his several misconduct hearings when she refused to allow Plaintiff's witnesses to testify.  (See C, AC-1, and AC-2, generally).  However, since the Fifth Amendment does not apply to state agencies or officials, examination of Plaintiff's due process claim must be limited to the Fourteenth Amendment.  See Chavez v. Martinez, 538 U.S. 760, 788 (2003).  A Fourteenth Amendment analysis proceeds below, and Plaintiff's Fifth Amendment claims should be dismissed in favor of the defendants.


**B.    Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and has procedurally defaulted.**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

The Supreme Court has held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 516, 122 S.Ct. 983, 984 (2002). Exhaustion of administrative remedies in §1997e(a) cases is mandatory and no case shall be brought *until* the inmate-plaintiff has done so. See Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819 (2001) (emphasis added); Ahmed v. Dragovich, 297 F.3d 201, 204-205 (3d Cir. 2002) (exhaustion must occur *prior* to filing suit). Accordingly, "it is beyond the power of the court to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000); Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) (rejecting futility exception) *aff'd*, 532 U.S. 731, 121 S.Ct. 1819 (2001).

In the instant case, Plaintiff concedes that there was a grievance procedure in place at SCI-Somerset. (See C, AC-1, and AC-2, *generally*). That grievance procedure, known as the DC-ADM 804, has already been determined by the Third Circuit to be an adequate administrative remedy for PLRA purposes. See Booth, 206 F.3d at 292; Ahmed, 297 F.3d 204-205. The DC-ADM 804 procedure applies to all state correctional institutions and requires three levels of review: (1) initial review by the facility grievance coordinator; (2) appeal from the initial review to the Superintendent or Regional Director; and (3) final appeal to the Chief Hearing Examiner. See Ahmed, 297 F.3d at 204-205; Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). Accordingly, exhaustion of administrative remedies under the DC-ADM 804 system requires a prisoner to present his claims at each level. See Spruill, 372 F.3d at 232 (discussing prisoner's exhaustion of grievance through "all stages" under DC-ADM 804).

This specific application of the PLRA exhaustion requirement to the DC-ADM 804 system was recently described, succinctly, by Magistrate Judge Caiazza:

> "It's now crystal clear that the mandatory exhaustion requirement requires an inmate to present his claims to all three levels of DOC review in order to allow DOC the opportunity to address and respond to the grievance.
>
> Allowing an inmate to bypass this requirement would eviscerate the exhaustion requirement and undermine the efficacy of Congress' policy objectives."

Mungro v. Hartwiger, W.D.Pa. Civil Action No. 04-1304, Order of Court dated March 24, 2006 (doc. # 68), adopting Report and Recommendation (doc. # 64).

The Third Circuit has also determined that the PLRA exhaustion requirement contains a procedural default component.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  In so reaching its conclusion, the Spruill court noted that the PLRA does not require mere "simple" exhaustion, but requires "proper" exhaustion -- from which the concept of procedural default is a ready deduction.  Id., at 227-228.  The Court specifically held that failing to timely appeal or failing to specifically name accused individuals in a grievance amounts to procedural default – meaning not only that the inmate's administrative remedies have *not* been exhausted in accordance with the PLRA but that the procedures expressly provided by the DOC for doing so have been apparently disclaimed by the prisoner litigant in favor of his premature resort to complex civil litigation in the federal district court.  Id.  Tolerance for this practice would expressly conflict with the intent of Congress in enacting the PLRA, (as specifically acknowledged by the Supreme Court in Booth, 532 U.S. 731 (2001), and Porter, 534 U.S. 516 (2002)), to reduce the undue burden of prison litigation on the federal courts.

In the instant case, Plaintiff has attached 27 grievances to his First and Second Amended Complaints[2].    (See AC-1, and AC-2).    Plaintiff avers that he filed these grievances in relation to the conduct he complains of in the instant action.  Id.  At the outset, it is important to note that only nine of these grievances contain grievance numbers or any indication that they were actually submitted by Plaintiff.  Id.  A brief description of the logistic processing of a grievance is necessary.

Grievances are submitted on a DC-ADM 804 form entitled "Official Inmate Grievance."  Id.  These forms are affixed with three carbon copies.  Id.  An inmate fills out the grievance form and submits it for review by the facility grievance coordinator. (See Exhibit A).  Upon receipt, the facility grievance coordinator assigns a number to the grievance.  Id.  That number is reflected on the grievance itself in the upper right hand corner.  Id.  The facility grievance coordinator also signs and dates the grievance, signifying that the "grievance has been received and will be processed in accordance with the DC-ADM 804."  Id.

Since the vast majority of the grievances submitted with Plaintiff's First and Second Amended Complaints contain neither a grievance number, nor the signature of the facility grievance coordinator, it is the defendants' position that they were never submitted, much less administratively exhausted, by Plaintiff.  (See Exhibit A).

Moreover, the dates of many of these unnumbered grievances also belie any contention by Plaintiff that they were exhausted.  The First Amended Complaint was

---

[2] In considering a 12(b)(6) motion to dismiss, courts may take judicial notice of public records, orders, exhibits attached to the complaint, and items appearing in the record of the case.  See Oshiver v. Levin, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Dinicola v. DiPaolo, 945 F.Supp. 848, 855 n.2 (W.D. Pa., 1996).

filed on January 15, 2004.    (See Doc. # 6).    Plaintiff submitted with that filing unnumbered grievances dated: December 22, 2003; December 31, 2003; January 2, 2004; January 12, 2004; and January 13, 2004.  Id.  It is utterly impossible for Plaintiff to have exhausted these grievances through the three requisite DC-ADM 804 steps prior to filing the First Amended Complaint.

Likewise, Plaintiff filed the Second Amended Complaint on February 12, 2004. (See Doc. # 33).   Plaintiff submitted with that filing unnumbered grievances dated: January 17, 2004; January 27, 2004; January 28, 2004; and January 29, 2004.  Id.  Again, it would not have been possible for Plaintiff to proceed through the DC-ADM 804 review process with respect to these grievances prior to the filing of the Second Amended Complaint.

Similarly, the nine numbered grievances attached to Plaintiff's complaints were *not* exhausted.  (See Exhibit A).  Grievance numbers 66971, 65106, 65098, and 70193 were never submitted to final review.  Id.  Grievance numbers 69970, 69969, 67353, 66438, and 66435 were submitted to final review, but were filed untimely, and so dismissed upon receipt.  Id.  In light of Spruill, Plaintiff must be considered to have procedurally defaulted the exhaustion requirement with respect to these grievances as well.

Inasmuch as Plaintiff has not exhausted administrative remedies with regard to his present allegations, this case should be dismissed or, in the alternative, summary judgment should be granted, in favor of the defendants.

### C.    Plaintiff has failed to state a cognizable civil conspiracy claim upon which relief can be granted.

Plaintiff contends that all of the above-described acts of the defendants were done in the course of a civil conspiracy in violation of 42 U.S.C. § 1985.  (See C, AC-1, and AC-2, *generally*).  Conspiracy claims raised under federal civil rights laws fail to state a claim where they are based only on suspicion and speculation instead of fact.  See Young v. Kahn, 926 F.2d 1396, 1405 (3d Cir. 1991).  See also Williams v. Frame, 821 F.Supp. 1093 (E.D.Pa. 1993)(quoting Kalmanovitz v. G. Heileman Brewing Co., 595 F.Supp. 1385, 1400 (D.Del. 1984), aff'd, 769 F.2d 152 (3d Cir. 1985)("A general averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient")).  Further, an actionable conspiracy claim pursuant to 42 U.S.C. § 1985(3) must include an allegation that the purported conspiracy was motivated by invidious discrimination based class or race.  See Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971).  Plaintiff has made no such allegation in this case.  (See C, AC-1, and AC-2, *generally*).

Moreover, "[c]ivil conspiracy occurs where two or more persons combine or agree intending to commit an unlawful act or do an otherwise lawful act by unlawful means."  Brown v. Blaine, 833 A.2d 1166, 1173 n. 16 (Pa.Cmwlth. 2003) (citation omitted).  However, the mere assertion that prison officials engaged in a civil conspiracy is not enough.  See Brown, *supra*.  Specificity in the pleadings is required and, in addition to the bare-minimum facts set forth above, a plaintiff must allege "an overt act done in pursuance of a common purpose" and "actual legal damages."  Id., *citing*, McKeeman v. Corestates Bank, N.A., 751 A.2d 655 (Pa.Super. 2000).  Put another way, "allegations of conspiracy are insufficient to state a cause of action where the Complaint fails to allege

'facts constituting the conspiracy, its object and accomplishment." <u>Tumi, Inc., v. Excel</u> <u>Corp.,</u> 2005 WL 1828593, *6 (D.N.J. 2005) (internal citation omitted).

Although Plaintiff alleges numerous "overt acts," it is not clear from the Complaint who, specifically, Plaintiff believes participated in the so-called conspiracy, nor what "common purpose" those individuals might have had, nor what, if any, actual legal damages resulted. (<u>See</u> Complaint, *generally*). As such, Plaintiff has failed to state a cognizable § 1985 claim.

Consequently, Plaintiff's 42 U.S.C. § 1986 claim must also fail. Section 1986 pertains to the failure to prevent a § 1985 conspiracy. <u>See</u> 42 U.S.C. § 1986. Thus § 1986 claims are dependent upon the establishment of an existing cognizable § 1985 claim. <u>See</u> <u>Clark v. Clabaugh</u>, 20 F.3d 1290, 1295 (3d Cir. 1994), *citing*, <u>Rogin v.</u> <u>Bensalem Township</u>, 616 F.2d 680, 696 (3d Cir. 1980), <u>cert</u>. <u>denied</u>, 450 U.S. 1029 (1981) ("transgressions of § 1986 by definition depend on a preexisting violation of § 1985").

Thus, both Plaintiff's § 1985 and § 1986 claims should be dismissed in favor of the defendants.

> **D. Plaintiff has failed to allege actual physical injury, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).**

Even if Plaintiff's allegations are somehow seen to state a cognizable claim, Plaintiff can only recover nominal damages because of the threshold requirement imposed by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e). The PLRA provides that:

> "Limitation on recovery.

> "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

42 U.S.C. §1997e(e).

In the instant case, Plaintiff makes <u>no</u> assertion of actual physical injury against the remaining defendants. (<u>See</u> Complaint, *generally*). Manifestly, this is not enough.

Since Plaintiff does not demand punitive damages in this case, the most he can recover is nominal damages and injunctive relief.

**E.    Plaintiff has failed to allege a cognizable Fourth Amendment claim upon which relief can be granted.**

Plaintiff alleges that his Fourth Amendment rights were violated by defendants Heiss, Stayer, Sobina, Molligan, Lucas, Delosh, and Fey when they made searches and seizures of his cell and person. (<u>See</u> C, at pp. 16-17; <u>and</u> AC-1, at pp. 9-11; 13-15; <u>and</u> AC-2, at pp. 2-3).

"[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984). Similarly, in cases such as this one, where an inmate does not allege that excessive force was used or that injury resulted, courts have held that strip searches do not implicate the Fourth Amendment. <u>See</u> <u>Wilson v. Harmon</u>, 2003 WL 21844285, *2 (D.Del. 2003), *citing*, <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979); <u>Wilson v. Shannon</u>, 982 F.Supp. 227 (E.D.Pa. 1997); <u>Goff v. Nix</u>, 803 F.2d 358, 370-71 (8th Cir. 1986); <u>Arruda v. Fair</u>, 710 F.2d 886 (1st Cir. 1983); <u>Campbell v. Miller</u>, 787 F.2d 217, 228 (7th Cir. 1986).

Both of these rules are consistent with the long-established principle that "to be free from unreasonable searches, is fundamentally inconsistent with incarceration." <u>Doe v. Delie</u>, 257 F.3d 309, 316 (3d Cir. 2001), *citing* <u>Hudson</u>, 468 U.S. at 527. Thus, Plaintiff's Fourth Amendment claims should also be dismissed.

> **F.    Plaintiff has failed to allege a cognizable claim related to verbal threats upon which relief can be granted.**

Plaintiff avers that, throughout the complained of conduct, he was subjected to verbal threats and harassment by defendants Trojan, Munion, Hughes, Chapley, Castina, Herdman, Wilson, Heckman, Heiss, Molligan, Sobina, Bertolini, Fey, Pritts, Stayer, and Lucas. (<u>See</u> C, and AC-1, *generally*).

The Third Circuit has held that, although unprofessional if true, "allegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983." <u>Burkholder v. Newton</u>, 116 Fed. Appx. 358, 360 (3d Cir. 2004) (internal citation omitted). The Federal District Courts of Pennsylvania have repeatedly applied this principle to matters similar to this one, i.e., where a *pro se* inmate sought to bring an Eighth Amendment excessive force claim regarding verbal threats or harassment by corrections officials. <u>See</u> <u>Mayhams v. Luzerne County Correctional Facility</u>, 2006 WL 839350, *1 (M.D.Pa. Mar. 28, 2006) (Slip) ("[i]t is well-settled that harassment, mere threatening language or gestures of an officer do not, even if true, amount to a constitutional violation"); <u>Abuhouran v. Acker</u>, 2005 U.S.Dist.LEXIS 12864, * 5 (E.D.Pa. June 29, 2005) ("derogatory language, verbal harassment, or threats standing alone do not state a constitutional claim").

In the instant case, Plaintiff does *not* contend that he was ever actually injured or incurred damages of any kind as the result of the defendants' alleged verbal threats/harassment.  (See C, AC-1, and AC-2, *generally*).  Hence, Plaintiff's claims in this regard should be dismissed in favor of the defendants.

> **G.    Plaintiff has failed to state a cognizable First Amendment access to the courts claim upon which relief can be granted.**

Under the First Amendment, prisoners are constitutionally entitled to meaningful access to the courts, free from governmental obstruction.  See Bounds v. Smith, 430 U.S. at 828.  However,

> [u]nder Lewis v. Casey, in order to prevail on an access to courts claim, the plaintiff must show that he suffered 'actual injury' due to the interference with his right of access.  See also, Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997)(holding that interference with prisoner's mail did not violate his right of access to courts without a showing of actual injury).

Booth v. King, 346 F.Supp.2d at 758.[3]

---

[3]As the Third Circuit has recently noted,

> The actual injury requirement is derived from the constitutional principle of standing.  Lewis, 518 U.S. at 349, 116 S.Ct. 2174.  In this context, a claim premised upon an argument that the alleged deprivation hindered the presentation of a frivolous claim is not sufficient to entitle relief.  See id. at 350, 116 S.Ct. 2174 (comparing a similar situation with that of a healthy inmate who is denied access to medical care); Walters [v. Edgar, 163 F.3d 430], 434-435 [(7th Cir. 1998)].  See also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)(requiring injury to be actual or imminent, not hypothetical or conjectural).

Gordon v. Morton, 131 Fed.Appx. 797, 798 (3d Cir. 2005).

The element of "actual injury" may "include a court dismissal of a complaint [or] an inability to even file a complaint." Booth v. King, 346 F.Supp.2d at 758 (citing Lewis, 518 U.S. at 351. Other examples include "missed court dates, missed filing deadlines, a denial of legal assistance to which he was entitled, or the loss of a case which he should have won." See Fortes v. Harding, 19 F.Supp.2d 323, 327 (M.D.Pa. 1998). Accordingly, when raising an access to the courts claim, a plaintiff must allege with specificity the manner in which the inadequacies of the prison law library or legal assistance, or the purported governmental interference, caused an actual injury to the inmate, such as the "loss or rejection of a legal claim." See Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997)(quoting Lewis, 518 U.S. at 351).

In the instant case, Plaintiff contends that his access to the courts was impeded by various defendants when they denied him access to the state copier, placed him on cell restriction that prohibited him from going to the law library, intercepted and destroyed unspecified legal mail, forced him to mail legal documents home, seized legal documents, denied him adequate law library access while confined in the RHU, and denied him requested law books. (See C, and AC-1, generally). However, Plaintiff does not allege that any of these supposed deprivations caused him "actual injury," as described above. (See C, AC-1, and AC-2, generally).

As such, Plaintiff's First Amendment denial of access to the courts claims should be dismissed in favor of the defendants.

**H.    Plaintiff has failed to allege a cognizable Eighth Amendment claim upon which relief can be granted.**

1.  Conditions of Confinement Claim

As to the applicable standard for conditions of confinement claims in the prison context, the Supreme Court has held that prisoners' conditions of confinement must be at least "humane."  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  However, as a matter of law, the Eighth Amendment does not require that inmates be afforded "comfortable prisons."  See Rhodes, 452 U.S. at 348.  "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Hudson, 503 U.S. at 9, *quoting*, Wilson, *supra*, 501 U.S., at 298, 111 S.Ct. at 2324; and Rhodes, *supra*, 452 U.S., at 347, 101 S.Ct. at 2399 (internal citation omitted).  Accordingly, an inmate's Eighth Amendment right to humane conditions of confinement is violated only where he is deprived of "the minimal civilized measure of life's necessities" by a prison official who exhibits a "sufficiently culpable state of mind," which is "deliberate indifference." Farmer, 511 U.S. at 834.  See also Wilson v. Seiter, 501 U.S. 294 (1991).

In the instant case, Plaintiff contends that he was subjected to unconstitutional conditions of confinement while confined in the RHU (see C, at p. 9; and AC-1, at pp. 7, 15-16; and AC-2, at pp. 2-3).  However, the specific conditions that Plaintiff complains amount to nothing more than a deprivation of amenities, are inherent in restrictive confinement settings such as the RHU, and have already been deemed Constitutional.

In Rivera v. Pennsylvania Department of Corrections, the Pennsylvania Supreme Court examined prison cell conditions similar to those alleged in this case.  See 837 A.2d

525 (Pa.Super. 2003). There, the prisoner-plaintiffs, Rivera and Torres, contended that they had been punitively confined in alternate housing in a long term segregation unit (LTSU) – a level of confinement more restrictive than the RHU - where the running water in the cell was controlled from outside, drinking water was only made available every few hours, and inmates were confined with no property and no clothing except a smock. See Rivera, 837 A.2d, at 531. The Court held that even these harsh conditions did not rise to the level of an Eighth Amendment violation. See Rivera, 937 A.2d, at 534.

In another case similar to this one, called Allebach v. Sherrer, the District Court of New Jersey held that there was no cognizable Eighth Amendment claim where the prisoner-plaintiff had been "denied (1) running water, (2) religious items, (3) visitation, (4) recreation, (5) use of the telephone, (6) a mattress and (7) clothing" for a six-day period. 2005 WL 1793726, *3 (D.N.J. July 27, 2005). There, the Court noted that the plaintiff's confinement under these conditions had been precipitated by his own misconduct, and that he had failed to allege a deprivation of a single minimal civilized need. See Allebach, 2005 WL at *4.

Like the prisoner plaintiff's in both Rivera and Allebach, the denial of amenities related to Plaintiff's RHU confinement does not equate to a denial of the "minimal civilized measure of life's necessities." Moreover, Plaintiff does not allege that the defendants were deliberately indifferent to the conditions of his confinement, apart from the actual decision to place him in the RHU.

As such, Plaintiff's Eighth Amendment conditions of confinement claim should be dismissed in favor of the defendants.

2. Excessive Force Claim

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment clause depends upon the claim at issue." Hudson v. McMillan, 503 U.S. 1, 8 (1992). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is… whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. See also Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002); Camp v. Brennan, 54 Fed.Appx. 78, 80 (3d Cir. 2002).

In determining whether this standard has been met, a Court must consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injuries inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2002).

Despite this test, and the need to examine each prong, "not every malevolent touch creates a federal cause of action." Hudson, 503 U.S. at 9. The Third Circuit has held specifically that "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." Reyes v. Chinnici, 54 Fed.Appx. 44, 48 (3d Cir. 2002). We have reached that point in this case.

Plaintiff's Eighth Amendment excessive force allegation is that defendants Chapley and Pritts were "pushing and pulling" him. (See C., at p. 12). Plaintiff does not

allege that he was injured during these purported events.  Id.  Allegations of far more force have been deemed *de minimis*, and dismissed at the summary judgment stage.  See Reyes, *supra.* (summary judgment granted where corrections officer punched inmate in the shoulder in order to avoid being spit on); Thomas v. Ferguson, 361 F.Supp.2d 435, 439-441 (D.N.J. 2004) (summary judgment granted on the basis that "[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct… does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind'" where inmate alleged he was punched and shoved by corrections officers); Wilson v. Reinhart, 2003 WL 21756393 (D.Del. 2003) (summary judgment granted where corrections officer sprayed inmate in the face with mace).

As such, Plaintiff's Eighth Amendment excessive force claims should be dismissed in favor of the defendants.


3.  Failure to Protect Claim

In an Eighth Amendment failure to protect claim, such as this one, a two-prong test is applied whereby: (1) the constitutional deprivation alleged by plaintiff must be "objectively, sufficiently serious"; and (2) the defendant prison official must have a "sufficiently culpable state of mind."  Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001) (internal quotations omitted).   In the most recent Third Circuit interpretation of this test, the court held that a prisoner-plaintiff "must show that they faced a 'substantial risk of harm' to which the [corrections] defendants acted with 'deliberate indifference.'"  Heggenmiller v. Edna Mahan Corr. Inst., 128 Fed.Appx. 240, 246-47 (3d Cir. April 11, 2005), *citing*, Farmer, 511 U.S. at 828-29.  See also, Wilson v. Seiter, 501

U.S. 294, 298 (1991); Hudson v. McMillan, 503 U.S. at 5; Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Helling v. McKinney, 509 U.S. 25, 35 (1993).  The Court went on to define 'deliberate indifference,' stating that "this level of actual knowledge requires that "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Heggenmiller, 128 Fed.Appx. at 245, *citing*, Farmer, 511 U.S. at 837.

In the instant case, Plaintiff alleges that defendants Bertolino and Simosko failed to protect him from above-described "assault" by defendants Chapley and Pritts.  (See C., at p. 16).  However, as stated above, Plaintiff does not allege any injury as the result of this supposed altercation.  Id.  Thus, Plaintiff has plainly failed to allege an objectively, sufficiently serious harm.

"[E]ven if it could be concluded that [the defendants'] conduct was somehow unreasonable, 'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim."  Pagels v. Morrison, 335 F.3d 736, 742 (8th Cir. 2003), *citing*, Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998).  See also Williams v. Sweeney, 1997 U.S.Dist.LEXIS 4752, *10-11 (E.D.Pa. 1997), *quoting*, Freedman v. City of Allentown, PA, 853 F.2d 1111, 1115 (3d Cir. 1988) ("even if the defendants were negligent [regarding the protection of an inmate] this was not sufficient to establish liability"); Jones v. Vaugh, 2005 U.S.Dist.LEXIS 17016, *23, *citing*, Estelle v. Gamble, 429 U.S. 97, 105-106 (1976) ("[m]ere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment"); Davidson v. O'Lone, 752 F.2d 817, 826 (3d Cir. 1984) ("because of… the

purpose and essence of §1983" negligence claims are not cognizable under this provision).

The Seventh Circuit has taken this long-established standard once additional step, holding that even a showing of gross negligence is insufficient for establishing deliberate indifference in the context of a §1983 failure to protect claim. See Fisher v. Lovejoy, 414 F.3d 659, 662 (7th Cir. 2005), *citing*, Farmer 511 U.S. at 835; James v. Milwaukee County, 956 F.2d 696, 699 (7th Cir. 1992) ("proving deliberate indifference… requires more than a showing of negligence or even grossly negligent behavior").

As such, Plaintiff's Eighth Amendment failure to protect claims should be dismissed in favor of the defendants.

I.    **Plaintiff has failed to allege a cognizable Fourteenth Amendment claim upon which relief can be granted.**

The safeguards of the Due Process Clause are triggered only when a Fourteenth Amendment protected liberty interest is at stake. See Meachum v. Fano, 424 U.S. 215, 223-24 (1976). "Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). "The Due Process Clause itself confers only a very limited range of protected liberty on inmates lawfully convicted and confined in prison. Its substantive protection extends only to punishment and conditions of confinement not contemplated by the original sentence." Berrier v. Allen, 951 F.2d 622, 624 (4th Cir. 1991), citing Vitek v. Jones, 455 U.S. 480, 493 (1980). With specific regard to inmates such as Plaintiff, the United States Supreme Court has held that only instances of "atypical and significant hardship... in relation to the ordinary incidents of prison life"

can trigger the protection of the Due Process Clause.  Sandin v. Conner, 515 U.S. 472, 484 (1995).

In the instant case, Plaintiff raises several due process claims: (1) that he was denied a single-cell, or Z-code, status upon arrival at SCI-Somerset (see C, at pp. 6-8); (2) that he was denied witnesses at misconduct hearings (see C, and AC-1, *generally*); (3) that he was sentenced to separate periods of 30, 45, and 45 days in the RHU (id.); (4) that he was denied access to his prison file (see C, at pp. 9-10; 13-15); (5) that he was denied education and employment programs (id.); and (6) that his misconduct and grievance appeals were not responded to or were denied (see C, and AC-1, *generally*).  As a matter of law, Plaintiff fails in each of these regards to state a cognizable due process claim.

1.  The Z-code

"[B]ecause living in a double cell is an expected ordinary incident of prison life, retaining single cell status is not a protected liberty interest."  Austin v. Chesney, 1995 WL 498720, *1 (E.D.Pa. 1995).  See also, Rhodes v. Chapman, 452 U.S. 337, 347-349 (1981) ("to the extent that such conditions, [such as single celling] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society").  Correspondingly, misconducts incurred, as here, because of an inmate's refusal to double-cell also do not violate that inmate's due process rights.  See Brooks v. Kleiman, 743 F.Supp. 350, 352 (E.D.Pa. 1989).

2.  Witnesses at Misconduct Hearings

The United States Supreme Court has stated that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Wolfe v. McDonnell, 418 U.S. 539, 556 (1974).  With specific regard to an inmate's right to call witnesses at such a hearing, the Court has held that "[t]he right to call witnesses is a limited one constrained by reasonable institutional concerns including, but not limited to, safety, order, and retaliation.  Officials must, however explain, at some point, why they refused the request to call witnesses."  Harvin, 1997 WL at *6, citing Ponte v. Real, 471 U.S. 491, 497 (1974).  Furthermore, "due process requires only that there 'be some evidence' supporting a disciplinary decision... and it is the hearing examiner's providence, and not this court's, to gauge the credibility of evidence and witnesses at a misconduct hearing."  Rauso v. Vaughn, 2000 WL 873284, *8 (E.D.Pa., 2000) citing, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 455-56 (1985).

In the instant case, the defendants complied with all of the above-described requirements.  A review of Plaintiff's misconduct summary shows that Plaintiff did not receive a misconduct in the beginning of June, 2003 for refusing to double-cell, or any other reason.  (See Exhibit B.  See also, C at p. 8).

The misconduct that Plaintiff alleges he received for urinating himself in the day room on July 9, 2003 is misconduct number A439377.  (See Exhibit C.  See also, C, at pp. 12-13).  Plaintiff indeed listed three inmate witnesses that he desired for the misconduct hearing.  Id.  Plaintiff was informed by hearing examiner Cross, in writing, that these witnesses would not be permitted because they were "not needed to establish

guilt." Id. Based upon Plaintiff's own admission that he had urinated on the day room floor, and upon the eyewitness testimony of the charging corrections officer, hearing examiner Cross found Plaintiff guilty and sentenced him to 45 days disciplinary custody. Id. This decision was upheld on appeal by the Prison Review Committee. Id.

The unspecified misconduct for which Plaintiff alleges he received a hearing on September 2, 2003, is misconduct number A589711. (See Exhibit D. See also, C, at p. 14). In this misconduct, Plaintiff was charged with "threatening an employee or their family with bodily harm" and "using abusive, obscene, or inappropriate language to an employee" for an incident on August 26, 2003 wherein, when challenged for responding to the wrong line call, he stated "I don't like white people! come on in, I'll kick your ass! Motherfucker!" (See Exhibit D). Once again, Plaintiff's request that three inmate's be permitted to testify at the misconduct hearing was denied by hearing examiner Cross on the basis that they were "not needed to establish guilt / innocence." Id. After consideration of Plaintiff's written version of the incident and the charging officer's account, Cross sentenced Plaintiff to 45 days in disciplinary custody. Id. This decision was upheld on appeal by the Prison Review Committee. Id.

Finally, the grievance that Plaintiff alleges he received on October 16, 2003 for destroying property is grievance number A625801. (See Exhibit E. See also, AC-1, at p. 12). Actually issued October 14, 2003, Plaintiff received this misconduct for tearing state-issued towels into pieces. (See Exhibit E). This time, Plaintiff requested that three corrections officials be called as witnesses at the misconduct hearing. Id. Again, hearing examiner Cross determined that these witnesses where "not needed to establish guilt/innocence," and denied Plaintiff's request. Id. Based upon Plaintiff's own

admission that he had torn the towels, and the charging officer's testimony, Cross fined Plaintiff $8.30 – the cost of replacing the destroyed towels.  Id.  Plaintiff did not receive any disciplinary custody for this conduct.  Id.  Once again, this decision was upheld by the prison review committee.  Id.

As such, defendants are entitled to summary judgment on Plaintiff's due process claims related to his inability to call witnesses at his misconduct hearings.


3.  The RHU Sentences

"[S]hort-term confinement in the RHU does not implicate a legally cognizable liberty interest that triggers due process guarantees."  Sims v. Vaughn, 2005 WL 3508621, *5 (E.D.Pa. Dec. 22, 2005) (Slip).  In the instant case, separate periods of 30, 45, and 45 days are certainly "short-term," within the meaning of this principle.  See Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (disciplinary detention for 15 days and administrative custody for 120 days did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months in the RHU did not implicate a protected liberty interest).


4.  Prison File Access

"A prison inmate has no constitutional right of access to his prison file."  Stanton v. Zimmerman, 1986 WL 5179, *3 (E.D.Pa. 1996), citing, Paine v. Baker, 595 F.2d 197, 200 (4th Cir.), cert. denied, 444 U.S. 925 (1979).  See also Lopez v. Hayward, 5 F.3d 537 (9th Cir. 1993).

Moreover, Plaintiff's contention here that he was denied access to his prison file must be considered bald. (See C, at p. 10). He provides no explanation as to why he desired such access, nor what, if any, prejudice he incurred because the denial. Id. Accordingly, this allegation need not even be considered by the Court. See Jones v. Hendricks, 2006 WL 861018, *2 (3d Cir. April 4, 2006) (Slip) (a Court need not accept a pro se inmate's conclusory allegations at the summary judgment stage); Gagliardi v. Kratzenberg, 404 F.Supp. 2d 858, 860-861 (W.D.Pa. 2005), *citing*, Morse v. Lower Marion School District, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted) (a Court need not accept a pro se inmate's bald assertions or legal conclusions at the Rule 12(b)(6) motion to dismiss stage).


5. Education / Employment Programs

It has long been established that "[a]n inmate does not have a protected liberty or property interest in continued prison employment." Wilkins v. Bittenbender, 2006 WL 860140, *9 (M.D.Pa. March 31, 2006) (Slip), *citing*, James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975).

Based upon the same principle, there an inmate likewise does not have a due process right to prison educational programs. See Nicholson v. Carroll, 390 F.Supp.2d 429, 435 (D.Del. 2005), *citing*, James v. Quinlan, *supra*.; and Bryan v. Werner, *supra*.

6.  Misconduct / Grievance Appeals

It is well-established that "prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights."  Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa. 1997), *aff'd* 142 F.3d 430 (3d Cir. 1998) (Table), *citing* McGuire v. Foor, Civil Action No. 94-6884, 1996 WL 131130 at *1 (E.D.Pa. 1996), *aff'd*, 101 F.3d 691 (3d Cir. 1996).

Accordingly, a prisoner does not have a right to file a grievance.  See Wilson, 971 F.Supp. at 947, *citing* Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  Hence, as it has been found by the Third Circuit, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement (see Rode, 845 F.2d at 1208, nor is concurrence in an administrative appeal process (see Watkins v. Horn, 1997 WL 566080, *4 (E.D.Pa. 1997)), nor even affirmation of a prison review committee decision (see Garfield v. Davis, 566 F.Supp. 1069, 1074 (E.D.Pa. 1983)).

In sum, Plaintiff's due process should be dismissed or, in the alternative, summary judgment granted, in favor of the defendants.

> **J.    Plaintiff has failed to allege a cognizable First Amendment religious exercise claim upon which relief can be granted.**

Prisoners have a First Amendment right to practice their religion while incarcerated, but it is not absolute.  See Bell v. Wolfish, 441 U.S. 520, 544 (1979); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78 (1987).  "The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections... [o]nly those beliefs which are both sincerely held

and religious in nature are entitled to constitutional protection." <u>Dehart v. Horn</u>, 227 F.3d 47, 51 (3d Cir. 2000); <u>Africa v. Pennsylvania</u>, 662 F.2d 1025, 1029-30 (3d Cir. 1981) ("A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature...").

One permissible curtailment on religion is when it threatens the "order and security" of the institution. <u>See</u> <u>Fraise v. Terhune</u>, 283 F.3d 506, 516 (3d Cir. 2002). This is because "the very object of imprisonment is confinement." <u>Overton v. Bazzetta</u>, 123 S.Ct. 2162, 2167 (2003). Hence, "a lawfully incarcerated inmate can have his right [to free exercise] limited or withdrawn (<u>Price v. Johnston</u>, 334 U.S. 266, 285, 68 S.Ct. 1049 (1948)) due to both his incarceration and 'valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security.'" <u>Hammer v. King</u>, 1990 U.S.Dist.LEXIS 10481, *14, 133 L.R.R.M. 2978 (E.D.Wa. 1990) *quoting* <u>O'Lone</u>, 482 U.S. at 348.

When a prisoner alleges the violation of his First Amendment right to free exercise of religion, the application of a 'reasonableness' test is triggered to balance those asserted rights with the institution's penological objectives. <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 (1987). This 'reasonableness' test was set forth by the Supreme Court in <u>Turner v. Safely</u> as requiring a four part analysis: (1) whether there is a legitimate rational connection between the prison regulation and the government interest; (2) whether the prisoners have alternative means of exercising the constitutional right in question; (3) the impact that accommodation of the constitutional right would have on other prisoners, guards, and prison resources in general; and (4) the availability of alternatives to the regulation. <u>See</u> <u>Turner</u>, 482 U.S. at 89-90.

Most recently, in Sutton v. Rasheed, 323 F.3d 236 (3d Cir. 2003), the Third Circuit applied the Turner test as described above. In reference to the first Turner prong, the Sutton court said that the Third Circuit "accord[s] great deference to the judgments of prison officials 'charged with the formidable task of running a prison.'" Sutton, 323 F.3d at 235, *quoting* O'Lone, 482 U.S. at 353. The Third Circuit interpretation of prong one requires this Honorable Court to "determine whether the government objectives underlying the regulations at issue are legitimate and neutral, and that the regulations are rationally related to that objective." Sutton, 232 F.3d at 253 *quoting* Thornburgh v. Abbott, 490 U.S. 401, 414-15 (1989).

In the instant case, Plaintiff does not disclose the nature of his religious beliefs, stating simply that, on two separate occasions, he was made to mail home a rosary and throw away a bible. (See C, at p. 16). Even if it is assumed that Plaintiff has met the requirements of prong one of the Turner test – i.e, that whatever his beliefs are they are religious in nature and sincerely held – Plaintiff has nonetheless failed as a matter of law to state a cognizable First Amendment claim.


The Third Circuit has interpreted the second prong of the Turner test to require an assessment of "whether the inmates retain alternative means of exercising the circumscribed right." Sutton, 323 F.3d at 254, *quoting* Fraise, 283 F.3d at 518. In the context of free exercise cases, the Third Circuit has focused this consideration on "whether the inmate has alternative means of practicing his or her religion generally, not whether [the] inmate has alternative means of engaging in [any] particular practice." DeHart v. Horn, 227 F.3d 47, 55 (3d Cir. 2000). See also Sutton, 323 F.3d at 255.

Here, inasmuch as Plaintiff does not allege that he was foreclosed, or even impaired, from practicing his religion, Plaintiff cannot meet the requirements of the Turner test, and his First Amendment free exercise claim should be dismissed accordingly.

**K.    Plaintiff has failed to allege a cognizable retaliation claim upon which relief can be granted.**

There is no doubt that retaliation is a violation of a prisoner's constitutionally protected rights. See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). Yet mere allegations of retaliation are insufficient to show a constitutional violation.

A proper retaliation claim must contain a showing of three factors by the plaintiff: (1) that he was engaged in a constitutionally protected activity; (2) that he was subjected to adverse actions; and (3) that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse actions. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). See also Rauser, 241 F.3d at 334; *adopting* Mt. Healthy City Board of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenging decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id.

In the instant case, Plaintiff claims that all of the defendants' complained of conduct was motivated by a retaliatory animus towards Plaintiff based on his instant and prior litigation against the DOC. (See C, AC-1, and AC-2, *generally*). Even if, for the

purposes of this motion, it was assumed that Plaintiff has met the first 2 requirements of the retaliation test, Plaintiff's claim fails in that he has pointed to absolutely no evidence of causation.  Id.

Though "at the summary judgment stage, the prisoner need only produce 'evidence from which a reasonably jury could conclude' that the exercise of his right was a substantial or motivating factor in the prison officials' actions," it has been firmly established that the prisoner "must provide more than a 'scintilla of evidence' to survive summary judgment."   Jones v. Vaughn, 2005 U.S.Dist.LEXIS 17016, *31 (E.D.Pa. August 16, 2005), citing, Booth v. Pence, 354 F.Supp.2d 553, 560 (E.D.Pa. 2005); Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  "[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."  Evancho v. Fisher, 2005 U.S.App.LEXIS 19585, *15 (3d Cir. Sept. 12, 2005), citing, Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980).

On the subject of the prong three causation inquiry, the Third circuit has held that temporal proximity can be relevant (see Rauser, 241 F.3d at 334), but cannot be dispositive of the issue.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000), citing, Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); Robinson c. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997) ("temporal proximity alone will be insufficient to establish the necessary causal connection when temporal relationship is not 'unusually suggestive'") (emphasis added).

A review of Plaintiff's litigious history reveals that he had two federal suits pending against the DOC when he filed the instant action:  (1) Rankine v. Brooks, et al., E.D.Pa. 01-652, initiated in February, 2001; and (2) Rankine v. Wolfe, et al., W.D.Pa. 03-

105, initiated in March, 2003.  Thus, the timing of this previous litigation, and the events alleged to have occurred here - at minimum, three months later - is not "unusually suggestive."

Hence, Plaintiff's retaliation claim should also be dismissed in favor of the defendants.


**L.    In the alternative, the defendants are entitled to qualified immunity.**

The doctrine of qualified immunity protects government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[4]  This standard was very recently clarified by the Third Circuit in Gilles v. Davis, in which they held that "qualified immunity encompasses mistaken judgments that are not plainly incompetent."  See Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005), *citing*, Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Moreover, in Anderson v. Creighton, 483 U.S. 635 (1987), the Court held that whether a government official could be held personally liable for conduct that allegedly violated a constitutional or statutory right depended on the objective legal reasonableness of the action.  Id. at 639.  Under this standard, government officials are shielded from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Id.  In Brown v. Grabowski, 922 F.3d 1097

---

[4] An order rejecting a request for summary judgment based on qualified immunity is deemed a final judgment and subject to immediate appeal.  See Behrens v. Pelletier, 516 U.S. 299, 307 (1996); Donahue v. Gavin, 280 F.3d 371, 381 n. 17 (3d Cir. 2002).

(3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991), the Third Circuit interpreted Anderson to require analysis not only for the clear establishment of the right that an official is alleged to have violated, but also of the specific official actions alleged to have violated the right.

In determining the applicability of qualified immunity to prisoner civil rights actions in the Third Circuit has held:

> Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. §1983. This section does not create any new substantive rights, but it provides a remedy for the violation of a federal constitutional or statutory right conferred elsewhere. Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)
>
> "When the defendant in a §1983 action claims qualified immunity, a court must first determine if the plaintiff's allegations are sufficient to establish the violation of a federal constitutional or statutory right." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed. 818 (1999), *citing* Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). If the plaintiff's allegations meet this threshold, a court must next determine whether the right that the defendant's conduct allegedly violated was a clearly established one, about which a reasonable person would have known. Id. If the plaintiff's allegations fail to satisfy either inquiry, then a defendant is entitled to qualified immunity and dismissal of the case. Deciding "this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

Doe v. Delie, 257 F.3d 309, 214-215 (3d Cir. 2001).  See also Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 2000) (until the question of qualified immunity is addressed, a court cannot reach the underlying merits of the case).

In the instant case, Plaintiff has failed to establish that the defendants' actions amounted to a violation of clearly established law, and has likewise failed to address whether defendants could reasonably have believed that their motivations where proper and lawful.  See Carsen v. Senate of Com. of Pa., 154 F.3d 82 (3d Cir. 1998).  As such, in the alternative to granting summary judgment on the bases set forth in sections A through K above, defendants are entitled to summary judgment on the basis of qualified immunity.

## IV.  CONCLUSION

WHEREFORE, it is respectfully requested that the instant case be dismissed, or in the alternative, that summary judgment be granted, in favor of the defendants.


Respectfully submitted,

**Thomas W. Corbett, Jr.**
Attorney General

BY:     __/s/ Mariah L. Passarelli_____
MARIAH L. PASSARELLI
Deputy Attorney General
PA I.D. No. 202469

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief Litigation Section


OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-3579

Date:   May 17, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DERRICK A. RANKINE,** | ) | **Civil Action No. 03-313E** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Judge Sean J. McLaughlin** |
| **V.** | ) | **Mag. Judge Susan Paradise Baxter** |
| | ) | |
| **SUPERINTENDENT RAYMOND J.** | ) | |
| **SOBINA, et al.** | ) | **Electronically Filed.** |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within **Brief in Support of Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment** was electronically filed and served upon the following via first-class mail:

DERRICK A. RANKINE
EU-5850
SCI-Somerset
1600 Walters Mill Road
Somerset, PA  15510-0002

BY:     /s/ Mariah L. Passarelli
              MARIAH L. PASSARELLI
              Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

(412) 565-3579

Date:  May 17, 2006